## THIRD DEPARTMENT, APRIL, 1968

## (April 16, 1968)

■ STATE BANK OF ALBANY, Appellant, v. JOHN F. HICKEY, Doing Business as HICKEY FORD SALES, Respondent.—REYNOLDS, J. Appeal from a judgment of the Supreme Court, Albany County, in favor of the respondent entered upon a jury verdict of no cause of action. Appellant seeks to recover from the respondent the unpaid balance allegedly due it as the assignee of a conditional sales contract for the purchase of an automobile by Richard and Nancy Hill. Appellant's position is that respondent upon assigning the contract agreed to guarantee payment in case of default by the Hills. The trial court found a factual issue as to the intent of the parties and accordingly submitted the question to the jury. Appellant excepted as to that portion of the charge calling for the jury to determine respondent's intent as a question of fact and requested a directed verdict in its favor. This request was denied as was a motion pursuant to CPLR 4404 for judgment *non obstante verdicto* following the jury's return of the verdict of no cause of action. Where the terms of a contract are plain and unambiguous, its construction is a question of law for the court (e.g., *Brainard* v. *New York Cent. R. R. Co.*, 242 N. Y. 125, 133; *Hartigan* v. *Casualty Co. of America*, 227 N. Y. 175). A reading of the contract here involved clearly indicates in unambiguous language that respondent guaranteed payment in the event either that the contract was signed on the reverse side by the respondent, which was not done here, or that although not signed it was delivered by the respondent to the appellant. It cannot be seriously disputed that respondent delivered the contract to the appellant or that the exclusionary clause relating to the " State Bank Retail Plan " is not applicable. Accordingly, in the face of the clear imposition by the contract of the obligation of guarantor, respondent's subjective intent was immaterial and could play no part in the decision of the case (e.g., *Brainard* v. *New York Cent. R. R. Co.*, supra, p. 133) and, of course, this is so even if respondent secretly harbored an intention not to become a guarantor (*Porter* v. *Commercial Cas. Ins. Co.*, 292 N. Y. 176). Nor considering that respondent admittedly read the entire contract, that he had been in the car business since 1956, that prior to that he had been credit manager for a lending institution and that at the trial he conceded he was an " expert " on retail installment contracts is there any room in this case for an argument that the circuitous structure for acceptance was unconscionable (see Uniform Commercial Code, § 2-302). Judgment reversed, on the law and the facts, and judgment directed for the appellant, with costs. Settle order. Reynolds, Aulisi and Staley, Jr., JJ., concur in a memorandum decision by Reynolds, J.; Gibson, P. J., and Gabrielli, J., dissent and vote to affirm, in a memorandum. Gibson, P. J. (dissenting). The issue of ambiguity seems to me not as easily disposed of as the prevailing memorandum would have it. The majority's reference to the " circuitous structure " of the contract is apposite and descriptive, albeit

a somewhat charitable understatement. The language of the contract is, in truth, labored and redundant. The diffuse references to the tortuous path to be traversed to isolate and identify the guarantee resemble nothing so much as the sequential clues of a treasure hunt, in reverse in this case. Upon the first page of the one-sheet document, the essentials of the sales contract are set forth, in part in bold print and in part in somewhat less prominent type, following which appear lines, with accompanying legends, for the signatures and addresses of the parties and the witnesses, the spaces being substantially completed. *Below* the signatures, three paragraphs of fine print are set forth. The first begins: "For value received, undersigned does hereby sell", and there follow repeated references to the "undersigned"; but there is no "undersigned" and no space or provision for an undersignature. In the third paragraph appears language purporting to guarantee payment, again by the "undersigned", with the addition "except as otherwise provided under the State Bank Retail plan"; but again there is no "undersigned" and there was, indeed, no Plan. Assuming that these clauses, unsigned as they were and with no provision for signature, were within and part of the contract, there is no overt indication at that point that the contract does not end there. Upon turning the page, however, there is to be found on the reverse side a further effusion of unsigned provisions, these consisting of 12 numbered paragraphs followed by three clauses headed by the bold-type legend "Seller's Assignment and Guaranty Full Recourse", below the body of which are spaces for signature and date, none of which was signed or otherwise completed. The third clause of these three, for no apparent reason, repeats, word for word, the language of the guarantee on the face of the document, with but one exception which is not material here. *Above* these three clauses and their conspicuous heading appear 12 fineprint paragraphs, the twelfth being that which the prevailing opinion refers to as "clearly" indicating defendant's liability in "unambiguous language", as follows: "12. If the assignment and guarantee printed below is not executed by the seller delivery by seller of the original of this contract to State Bank of Albany shall constitute an assignment and guarantee by seller in accordance with seller's assignment and guarantee set forth on the reverse side hereof and seller hereby adopts his signature on the reverse side hereof as his signature to said assignment and guarantee." Thus there emerge, in one relatively short sentence, no less than three guarantees or expressions of guarantee; that here relied upon being formulated by a species of gobbledygook whereby reference is made in one unsigned and unauthenticated clause on the reverse side of the document to a signature in a second portion of the contract, this on the face of the instrument and some 15 paragraphs back, with the presumed effect of transposing that signature downward to yet a third portion of the contract, to denote the "undersigned" guarantor. The record in this case supports the implicit finding of ambiguity in this instrument, which plaintiff prepared and tendered for execution, and the further conclusion that there was no meeting of the minds with respect to any guarantee such as plaintiff seeks now to enforce. Defendant signed neither of the conspicuously captioned forms of guarantee embodied in the sales contract and we are not required, on this record, to hold that on perusing the diffuse and devious language of paragraph "12" he was bound in law to perceive the other party's intent to express and impose a guarantee there, additional to the two clearly indicated, but unsigned, guarantee clauses appearing elsewhere. Appellant correctly contends that respondent's subjective intent was not a proper subject of testimonial proof; but the errors, if such there were, in the reception of particular evidence and in the submission of the case for decision by the jury rather than by the Trial

Judge, are not now material, inasmuch as this court is, of course, empowered to decide the issues upon the competent evidence and the law, as the Trial Judge should or might have done, and could modify and affirm accordingly. Contributing to the factor of ambiguity is the reference in paragraph "12" to the seller's signature on the other side. Defendant, upon examining paragraph "12", could properly conclude that such reference pertained to the signature, if any (and there was none), under the assignment and guarantee clause on the first page, and not to the signature under the bare retail installment contract preceding it. Thus, defendant cannot be held to have perceived that the signature on the other side referred to the one under the installment contract, and not to the one called for under the assignment and guarantee. The signature to the installment sales contract is not even implied, much less specified. Whether this confused and confusing document, upon a form apparently wholesaled in the thousands — one of a printing of "10M — 9-59" — was the product of inept draftsmanship by a legal stationer or supplier, and was in part, perhaps, the result of a printing compositor's errors of transposition, need not be conjectured. Whatever its origin, it does not call for a forced and strained interpretation, at the behest of the party which sponsored it, and a holding that its cloudy language is crystal clear. Surely, present-day business practice and climate, as well as the customarily expeditions handling of routine commercial transactions such as this, require simpler and more direct expression of an elementary contractual provision and demand at least minimal legal skill and supervision in its draftsmanship. The judgment should be affirmed.